White, J.
The original action was brought by Machir and Renick against Ormsbee on a contract for the sale of corn.
The contract was reduced to writing; and consists of two instruments, one signed by Machir and Renick, the other by Ormsbee, and interchangeably delivered by each party to the other.
The following is a copy of that signed by Renick and Machir:
“ I have this day sold to O. Ormsbee 8,000 bushels of ear-corn, to be delivered on board canal boats at West Fall, O., to be paid for as fast as it is delivered on boats, at the rate of seventy-five cents per bushel; the corn to be delivered in the month of December, 1864, high water in the river and canal obstructions excepted. In case not delivered before April or May, ten per cent, is to be added to the price.
“ Reniok & Maohir.”
That signed by Ormsbee is in these words:
“ I have this day bought of Charles F. Machir eight thousand bushels of ear-corn, to be delivered on board canal boats at West Fall, O., to be paid for as fast as it is delivered on board canal boats, at the rate of seventy-five cents per bushel; the corn to be delivered in the month of December, *302 1864, high water in the river and canal obstructions excepted. In case corn not delivered before April or May, ten per cent, is to be added to the price.
“ Q. Ormsbee.
“ OirdleviUe, O., Dea. 1864”
The writing signed by Ormsbee is referred to in and attached to the petition.
The contract is declared upon as a bargain and sale by the plaintiffs to the defendant of “ a large quantity, to wit, about 8,000 bushels of ear-corn then in certain cribs on the Renick and Crouse farm, near West Fall;” and the petition avers that “ the defendant promised to accept, and pay the plaintiffs for said corn on delivery.” The price and the time and place of delivery set forth are the same as stated in the writing.
Omitting much detail and immaterial matter, the answer contains in substance:
1. A denial that the defendant bought any number of bushels of corn as in the petition alleged.
2. Averments that in certain specified particulars the written contract does not contain the agreement as actually made; that these terms were omitted by mistake in reducing the agreement to writing; and a prayer that the contract as written may be' reformed to conform to the contract as actually made.
3. Averments that the defendant has always been ready and willing to receive and pay for the corn so agreed to be delivered; but that the plaintiffs at no time had good merchantable corn to deliver; that a specified quantity of corn had been delivered which was not good and merchantable; and that he had paid certain specified sums of money on the contract which he was entitled to recover back, and for which he asks judgment.
Issue was joined by reply on the new matter set up in the answer.
At the November term, 1866, the issues arising on the equitable case made in the answer for a reformation of the written agreement were submitted to the court for trial, and *303 the court found for the plaintiffs, and adjudged that there was no mistake or omission in the written agreement. Thereupon the remaining issues were submitted to a jury, who found for the plaintiffs; and after judgment the defendant took a second trial under the statute.
At the June term, 1867, the same issues which had been tried to the jury at the former term were again submitted to a jury for second trial.
The record shows expressly that neither party desired a retrial of the issues which had been tried by the court at the former term; and the decision of the court on these issues was regarded as final.
On the second trial Charles E. Machir, one of the plaintiffs, was allowed to testify: “ That at the date of the contract the plaintiffs had eight thousand bushels of sound merchantable corn in certain cribs, nineteen or twenty in number, on the farm of Renick and Crouse, in said county, and that said cribs then contained, by measurement made by said Machir a short time before the making of said contract (the measurement not claimed to be accurate), eight thousand six hundred and fifty bushels of corn; and that the plaintiffs on December 2d, 1861, sold to the defendant all the corn in said cribs.”
Further evidence was also allowed to be given by parol, that the cribs “contained 8,650 bushels of corn that had been raised on said farm, of which three thousand bushels were owned by the plaintiffs jointly ; 2,500 bushels by the plaintiff Machir alone; 1,000 bushels by one Lemuel Real; 1,200 bushels by one Rhoads; 250 bushels by one McKinley ; and 700 bushels by said Machir and one List jointly; and that a portion of the corn was about a half a mile, and the residue three-fourths of a mile, from West Fall, the place at which said com was to be delivered by the plaintiffs and received by the defendant; ” and that at the time of making the contract with the defendant, the plaintiffs had authority from the other owners to sell their portions of said corn.
The defendant objected to the introduction of all of the foregoing evidence, but his objection was overruled, and he duly excepted.
*304 The plaintiffs were also allowed to give evidence to show that the corn was matured when, put into the cribs, and was carefully put up; that the cribs were not covered, but the corn on top was raised and arranged in the shape of a roof, and that this was proper and sufficient protection from exposure to the weather, according to the rules of good husbandry.
The defendant gave evidence tending to show that the corn which the plaintiffs were ready and willing to deliver in fulfilment of the contract, as well as that which had been delivered, was not sound and merchantable.
The evidence objected to by the defendant was allowed to go to the jury, on the ground that the contract, taken in connection with the pleadings, was for the sale of a specific lot of eight thousand bushels of corn in the cribs before mentioned ; and • this view of the case was followed in the charge.
The court instructed the jury, among other things, as follows : “ In this case the sale was of eight thousand bushels of sound merchantable ear-corn in certain cribs on the farm of Renick and Crouse, near West Fall, in this county, at the rate of seventy-five cents per bushel, to be paid for as fast as delivered, the purchaser to furnish boats to receive it on the canal at West Fall. It is claimed by the defendant that it is shown by the evidence that there were in those cribs eight thousand six hundred and fifty bushels of corn, and as the defendant was only bound to receive and pay for eight thousand bushels, a separation of that quantity from the general mass was to be made by Machir, and consequently the sale was not complete. Suppose it to be shown that there were eight thousand six hundred and fifty bushels of corn in those cribs, that will not, in this case, vary the legal effect of this contract. If you find that it was the intention of the parties that all the corn in those cribs was purchased and sold; that corn of the quantity and quality specified was in the cribs spoken of, in a state ready for delivery at the time of making the contract, nothing was to be done by Machir but deliver it and receive the money. The contract was, *305 therefore, executed so far as to fix the title to the property and the rights and liabilities of parties under it. . . . If Machir had eight thousand bushels of sound merchantable corn in the cribs at the place specified, ready for delivery on the day of the date of the contract, he was not responsible for the condition of that corn at any subsequent time, provided he did what the law required him to do in regard to preserving the corn from injury. The corn, by the terms of the contract, became the property of the defendant. Machir, however, was bound by the agreement to use all proper care . . . from thenceforward after the sale to protect the property from injury by reason of exposure to the weather, or any other cause that might be reasonably anticipated and pro vided against.”
A verdict was returned in favor of the plaintiffs, on which judgment was rendered.
A petition in error to reverse the judgment was filed by the defendant Ormsbee, in the district court, and was there reserved for decision by this court.
Tavo grounds are relied on for reversal: (1) that the court erred in admitting the parol evidence objected to by the defendant; and (2) in its charge as to the nature of the contract.
We think both grounds are well taken.
It is true the ansAver is deficient in precision, and contains much that is immaterial; and it is not surprising that in the midst of a trial its legal effect should be misunderstood.
We have endeavored above to state in brief what we understand to be its legal effect.
After the final determination that there was no mistake or omission in reducing the contract to Avriting, the rights of the parties Avere to be ascertained from the contract as written ; and upon a careful consideration of the pleadings, we find nothing in them to j ustify a construction of the contract different from what its terms import.
The two instruments of writing are parts of the same transaction, and taken together constitute the contract of the parties ; and the case turns on the legal effect of this contract.
*306 As we understand the charge, the court below in effect rules that, by the contract, there was a sale of eight thousand bushels of corn out of the larger quantity specified, and that the title vested in the purchaser on the making of the contract.
We are unable to adopt this construction. It seems to us the contract was wholly executory: and that it was not the intention to vest any property in the purchaser until the delivery stipulated for.
In Gillett v. Hill (2 C. & M. 530), Bayley, J., stated the law in the following language: “ The cases may be divided into two classes, one in which there has been a sale of goods, and something remains to be done by the vendor, and until that is done, the property does not pass to the vendee, so as to entitle him to maintain trover. The other class of cases is when there is a bargain for a certain quantity, ex a greater quantity, and there is a power of selection in the vendor to decline which he thinks fit; then the right to them does not pass to the vendee, until the vendor has made his selection, and trover is not maintainable before that is done. If I agree to deliver a quantity of oil, as ten out of eighteen tons, no one can say which part of the whole quantity I have agreed to deliver until a selection is made. There is no individuality until it has been divided.”
In Benjamin on Sales (p. 215) it is said: “When there has been no manifestation of intention, the presumption of law is that the contract is an actual sale, if the sjoeeifio thing is agreed on, and it is ready for immediate delivery; but that the contract is only executory when the goods have not been ; specified, or if, when specified, something remains to be done -to them by the vendor, either to put them in a deliverable shape, or to ascertain the price.”
The rule that no property passes where anything remains to be done to the subject-matter of the contract by the vendor, does not of course apply, where it appears to have been the intention of the parties that the property should pass notwithstanding. Turley v. Bates, 10 Jurist., N. S. 369.
But in the present case the plaintiffs engaged to deliver the *307 corn at a future time at a given place, and it was only to be .paid for as fast as delivered at that place.- The payment and the delivery were to be concurrent acts. If there was no delivery, nor what was equivalent to delivery, there was to be no payment. This consideration, in our opinion, repels the idea of the property passing to the purchaser at the date of the contract.
The remaining question is, whether there was error in admitting the parol evidence.
Testimony was allowed to be given that the plaintiffs owned and had control of more than eight thousand bushels of corn in certain cribs on the Renick and Crouse farm, and that this lot of corn was the corn sold by the plaintiffs to the defendant.
In the light of this evidence it is claimed, first, that the contract should be construed as a sale of all the corn in the cribs at the estimated quantity of eight thousand bushels; or, if this cannot be allowed, that it should be construed as a sale of eight thousand bushels out of the whole quantity.
To allow the first claim would be to contradict the contract in respect to quantity. The stipulation is for eight thousand bushels, and the purchaser can be required to take neither more nor less than that amount.
In answer to the second claim it may be said, that the testimony of the witness, that the particular corn was the corn sold, is clearly inadmissible. It furnishes evidence of no fact or circumstance surrounding the parties at the time of making the contract; but is an attempt to add to its terms.
The remaining fact, that the plaintiffs owned and had the disposal of the corn in the cribs, without any separation or identification of the part claimed to be sold, shows no more than that they had the means of performing the contract, and that the parties may have expected so much of the corn as might be necessary to be used for that purpose. But if this were so, as was said in Johnson v. Pierce (16 Ohio St. 478), they abstained from making what they expected, a part of their contract.
The contract by its terms is for the sale of a certain quan *308 lity of corn in general, and, for angbt that appeared, it would have been competent for the plaintiffs to have performed it by the delivery of any corn of the quantity and quality called for.
We do not question the well-established rule, that extrinsic parol evidence is -admissible to apply a written contract to its appropriate subject-matter. But in this case, the character of the extrinsic facts which the evidence tended to prove was not such as could be allowed to give to the contract the effect intended by the evidence.
Judgment reversed and cause remanded for a new trial.
Welch, Day, and MoIltaine, JJ., concurred.
Scott, C. J., did not sit in the case.